DAVID R. REED, State Bar #62479
Attorney at Law (Automatictrials@yahoo.com)
42-215 Washington St., Suite A-204
Palm Desert, CA 92211
(760) 333-7975

Attorney for: MARC LOPEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br>   Plaintiff,  <br>   -vs-  <br> MARC LOPEZ,  <br>   Defendant | NO: 2:23 cr-126 FLA #1  <br><br> POSITION OF MARC LOPEZ RE: SENTENCING FACTORS  <br><br> Date: May 31, 2024  <br> Time: 10:00 am |

To: the above-entitled Court, and Assistant United States Attorneys, Joseph De Leon and Jeremy Beecher:

Comes now David R. Reed, counsel for defendant, MARC LOPEZ ("Mr. Lopez") and files his Position Re Sentencing Factor Brief agreeing with the guideline calculation of the Probation Office. Should the court not dismiss this case on the recent United States v Steven Duarte, decision (9th Cir. No 22-50048) decided May 9, 2024, based on the companion motion to dismiss the Indictment, we ask for the mandatory minimum 15-year term. Under all the circumstances of this case, 15 years in prison is a "minimally sufficient sentence" for Mr. Lopez.

Dated: May 9, 2024

Respectfully submitted

/S David R. Reed

———————————

David R. Reed for Marc Lopez

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

This is a unique case. Before us, we have a defendant whose criminal record cannot be sugar-coated. However, the gravamen of his crime was peacefully sitting in his car at his home, while possessing firearms and ammo inside the vehicle. Had Mr. Lopez been actively committing a crime in relation to possessing the ammo and firearms, the Court would have aggravating reasons to sentence him to more than fifteen years.

In most federal cases, Counsel usually finds himself arguing for minimally-sufficient sentences for clients who have relatively minor criminal records, but became involved in serious federal offenses, e.g. distributing large-amounts of drugs, robberies, human sex-trafficking, large-scale bank fraud, i.e .serious criminal conduct. In Mr. Lopez's case, it's the other way around. Defendant has a long history of committing crime, some were violent, and all of which he's been punished with either jail or prison terms. It's important for the Court to note that two of defendant's three convictions for violent crimes, qualifying him for the "Armed Career Criminal Act" enhancement, were altercations with his ex-girlfriend, Ms. Jessica Sanchez (See PSR ¶s 8, and 10.)

Although Mr. Lopez was punished in the state system for his prior convictions, he shockingly found himself charged in federal court with a crime that requires a minimum fifteen-year prison term, driven by his state criminal record, not so much for having possessed ammo and firearms inside his car. Admittedly, Mr. Lopez must be punished for his recidivist criminal behavior, but we simply ask the Court to consider the following mitigating factors when sentencing him:

1) The government may confirm that although Mr. Lopez wanted a trial, he also wanted to do everything in his power to make the trial as accommodating as possible for the Court, the government and, especially the jury. Mr. Lopez asked to stipulate to as many undisputed facts as possible, to include his prior felony conviction, and not requiring the government to call an interstate-commerce, or DNA expert. It was the government's strategy to allow Mr. Lopez to stipulate to his "prior" and the ICC expert, but they wanted

to call their DNA expert to dramatize to the jury how statistically-small the number, "one in one-septillion" was, to show how impossible it would be for anyone on our planet, other than Mr. Lopez, to have touched the ammo-magazines in his car.

2) The Court will also recall that when defendant was convicted by the jury of the substantive 922(g) Count, even though it would have been his right to keep the jury for several more hours during a "Phase II" trial to hear witnesses testify about whether Mr. Lopez committed his violent priors on different occasions and render another verdict, he's not that kind of person. He wanted the jury to return to their normal lives, because he knew he had his day in court on the main issue of guilt. Unlike other defendants, who could care-less about jurors, especially after they just convicted him, Mr. Lopez has respect for our court and the time constraints placed on it, the government, the police officers who were set to testify, and the jurors. Accordingly, defendant was voir-dired and admitted to the court that his violent priors were committed on different occasions, so that everyone could return to their lives. The jury was then released.

3) Some people are cursed with a black-cloud above their head. Mr. Lopez is one such person. Defendant incessantly invites bad luck to engulf him by committing stupid crimes, e.g. stealing clothes from "Fallas," constant clashes with his Ex girlfriend, and over such things as not being served breakfast-in-bed. As the Court will recall, even this offense started with an altercation with Ms. Sanchez.

The background of this case was like a bad sequel to the movie, "Fargo." It began, again, with a quarrel between Jessica Sanchez and Mr. Lopez. Ms. Sanchez wanted to see her daughter and went to the daughter's school to pick her up against visitation terms. Defendant's mother gained full custody of defendant's daughter by this time. Mr. Lopez raced to the school, but felt sorry for Ms. Sanchez, and stupidly he agreed to let Ms. Sanchez take the child, but to return her to a prearranged local park at a specified time, not to defendant's home, because Mr. Lopez did not want his mother to find out about the visit. What Mr. Lopez should have done was never have allowed Ms. Sanchez to take the child in the first place. He should have given her a "wide berth" whenever he saw her.

As it turned out, Ms. Sanchez was late in returning the child to the park. Defendant drove over there to meet her and parked his car. Ms. Sanchez pulled up drunk with the daughter and her dog inside the car. Defendant did not want to see Ms. Sanchez get into an accident. So, he got into her car and drove them all back to his home. The daughter and the dog went into the home to remain safe. Mr. Lopez remained in the car in the drivers seat. Then, Ms. Sanchez demanded money from Mr. Lopez for rent. He refused and asked her to let him drive her car back to the park so he could pick up his car. She refused and threw a tantrum. She got out of the car screaming at defendant. He drove the car back to the park, parked the car, and retrieved his own car.

In the meantime, Ms. Sanchez ran to the nearby police station and made a false "armed car-jacking report" against defendant. A serious "approach-with-danger" warrant was issued for Mr. Lopez's arrest. Two days later, police saw Mr. Lopez sitting in his Dodge in front of his home with Mr. Benitez, along with a female drug addict Benitez had met earlier in the day. Mr. Lopez was arrested and the ammo and firearms in this case were eventually found.

Ms. Sanchez recanted the "armed"-part about Mr. Lopez's offense. As Mr. Lopez sat in jail, and since Ms. Sanchez recanted her story, Mr. Lopez was offered to plead guilty to a simple "joyriding" count. See ¶ 14 of the PSR, § 10851 of the Vehicle Code. Never in Mr. Lopez's wildest dreams could he have imagined that "Lady Bad-Luck" was about to unleash a hurricane on him in the nature of a future federal indictment charging him with the "Armed Career Criminal Act."

Mr. Lopez was shocked to learn that the possession of the ammo and firearms hidden under his car seat required a minimum 15-year federal prison term and that he must do the term in a higher-security United States Prison. Of course, this assumes the Court will be lenient and agree that 15-years is a minimally sufficient term for possessing some ammo and guns and varies downward from guidelines in his case.

**II. Guidelines**

A) The Correct Guideline

The defense agrees with the calculation of the Guidelines by the Probation Office in

every respect. Importantly, however, in rare circumstances like this one, fashioning a minimally sufficient sentence should not be tied to the astronomically high guideline range set for this crime. In extraordinary cases, as set forth above, to blindly apply guidelines would obscure the fact that sentencing should involve determining a minimally sufficient prison term. As extraordinary as this case is, we hope the court extraordinarily varies downward from the onerous guidelines.

### III. 3553 Factors

The guidelines are not mandatory. United States v Booker, 543 U.S. 220 (2005. In United States v Gall, 552 U.S. 38 (2007), the United States Supreme Court reiterated that Booker required the courts to individualize the sentence based on the offender. The Court instructed that district courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall, 552 U.S. at 52.

The overriding principle and basic mandate of Section 3553(a) requires the district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § (2), which are: (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.

### a) The History and Characteristics of the Defendant

The thorough Personal, Family Data, Physical and Mental Health Investigation by the Probation Office at PSR ¶s 36-52, demonstrates, once again, the role of an absent father figure and how that can sometimes result in children growing up with no moral compass. Defendant's father was never around when Mr. Lopez grew up in West Los Angeles. His mother is a wonderful person, who the Court had a chance to see when she testified at defendant's trial. However, defendant's mother and his grandmother were always working to put food on the table. Defendant's mother did the best that she could.

Defendant grew up in a high crime area. After Mr. Lopez met Jessica Sanchez, and had a child with her, a tremendous amount of misery and fear was brought, not only upon defendant, but his mother and grandmother as they tried to peacefully raise Aaliyah at their

residence. The mother of defendant needed to attend the dependency court to keep the child safe from her drug-addicted, gang-affiliated mother. Defendant was stabbed in his arm by gang associates of Ms. Sanchez. In 2014 Mr. Lopez's left leg was hit by a piece of shrapnel from a ricocheting bullet from being mistaken as a rival gang member in his neighborhood.

Defendant suffers from depression, anxiety, PTSD and paranoia. Mr. Lopez is being treated at MDC with various medications. What is currently weighing heavily on Mr. Lopez's mind is the fact that he faces many years in federal prison, his grandmother has died while he was in custody on this case, and his mother was just diagnosed with cervical cancer after the trial ended in this case. Defendant loves his daughter Aaliyah, who is now 9 years old. If defendant's mother dies from cancer, there will be no one to care for his daughter. The combination of all of the above factors, and because defendant has never faced a prison term of more than 2 years (they often commute down to 12-16 actual months in the state system,) he has an overwhelming feeling of despair and hopelessness because he faces a minimum of fifteen-years in federal prison, if he's lucky.

**b) The Nature of the Circumstances of the Offense**

As discussed, defendant sat peacefully in his parked car in front of his home while possessing some ammo and two "ghost guns" hidden within the car. Defendant did not commit an active related crime while possessing this contraband. He hurt no one. There were no victims in his case. Defendant's letter to the Court is attached.

We submit that it would be counter-effective to the notion of a "minimally sufficient" sentence based on possessing some ammo and two firearms, to sentence Mr. Lopez to more than fifteen years in prison. The sentence he is about to serve will be, by far, the longest sentence in his life. Accordingly, we ask the Court to vary downward to the mandatory-minimum fifteen-year term. We also ask the Court to recommend placement for defendant in a BOP facility within Southern California.

Dated: May 9, 2024          Respectfully submitted,

/S David R. Reed

David R. Reed for Mr. Lopez



(1)

First and foremost, I would like to apologize to the court and to our great country for my misbehavior. I didn't mean for any of this to happen. But, unfortunetly it did. I apologize for spending the courts time and money for taking my case to trial. But, I had no choice and had to have my case herd so the court could have a mild understanding of my situation and have the court realize that I was not terrorizing the streets with weapons but simply protecting my family from my insane and violent babies mother and her violent jelouse boyfriend who is gang affiliated.

Together: Jessica Sanchez, her violent jelouse boyfriend and thier gang would harasse me, my daughter, my mother, and grandmother - who was alive at the time, at our residence by damaging our property and shooting-out my car windows.

I AM NOT A KILLER YOUR HONOR, NOR AM I A PERSON OF HATE A NIETHER AM I A STREET OR PRISON GANGMEMBER. I'VE MADE MISTAKES, FOR WITCH I HAVE ALREADY PAID FOR, BUT WHEN IM GIVEN NO OTHER CHOICE I DID WHAT I MUST TO ENSURE MY SAFETY AND THAT OF MY FAMILIES AGAINST REAL VIOLENT CRIMINALS.

WHEN A PERSONS, DAUGHTER, MOTHER, AND GRANDMOTHER ARE IN THE CROSSHAIRS ANYONES FATHERLY INSTINCS WOULD OVERRULE ANY ALTERNATIVES.

I HAD NO WHERE TO RUN BECAUSE JESSICA, HER VIOLENT JELOUSE BOYFRIEND AND HIS GANG SEEMED TO BE EVERYWHERE.

I COULDN'T RELY ON THE POLICE BECAUSE ITS NOT LIKE THE OFFICERS HAVE MAGICAL FORESIGHT THAT IS ABLE TO RECOGNIZE DANGER DAYS, HOURS, MINUTES, OR EVEN SECONDS IN ADVANCE OR NIETHER WOULD THE OFFICERS ~~HAVE~~ POSTED OUTSIDE MY HOME 24/7- 365 DAYS A YEAR TO PROTECT ME AND MY FAMILY.

WE DON'T LIVE IN A WORLD WHERE A TOOL SUCH AS IN THE MOVIE: "THE MINORITY REPORT" EXITS AND ABLE TO PREVENT HARM IN ADVANCE.

(3)

I didnt mean to disrespect law enforcement, our great country, and its laws. But, what was I expected to do when violent crime syndicates, and a violent jelouse ex-girlfriend disrespects me and my families peace and security at our home and prey upon my life as it were a game not once, not twice, nor three, but four times within a five year span?

Thats not including the attempted assaults and mental torment passed on to my family - with rocks thrown through our homes window one of witch landed inches from my daughters face - while she slept silently at night. I did what any father in this courtroom would've done trying to protect his family against anyone attempting to harm his family.

Most Importantly, I was not out committing armed carjackings, murders, robberies or committing any crime of that sort but rather crime was put upon me and my family by vicious street hoodlums.

(4)

Not only did the suspects keep surveilance upon my home, but also spray painted threatening messages across the street from my families home exposing me and my family to mental torment having to wake-up every morning to the messages on the fence witch led me to arm myself for protection.

The real criminals stalked me and my family outside our home like a lion does its prey when it has a appetite for blood.

Now, my grandmother is dead, witch I believe the terror committed by Jessica and her boyfriends violent gang contributed to her death, and my mother sits at home ill with cancer and running the risk of having my daughter turned over to foster care making her an orphan, since her own mother has abandoned her, and now I sit in prison facing 15 years or more for protecting my family from violent individuals.

(3)

THERE ARE NO VICTIMS IN MY CASE AND YET IM BEING TREATED AS IF THERE IS WHEN IN FACT THE ONLY PEOPLE SUFFERING NOW ARE MY MOTHER AND DAUGHTER.

MEANWHILE, THE REAL EVIL PERPATRATORS WHO HARASSED ME AND MY FAMILY, ARE STILL OUT LINGERING IN THE STREETS CAUSING HAVOC, SELLING DRUGS AND POLLUTING THE YOUTH, TERRORIZING THE LOCAL COMMUNITIES, AND POSSIBLY PLANNING THIER NEXT ATTACK WHILE I SIT IN PRISON FACING 15 YEARS OR MORE FOR SIMPLY PROTECTING MY FAMILY.

IM DOING MORE TIME FOR MY PAST THEN THE ACTUAL CRIME THAT IM HERE FOR. I UNDERSTAND I HAVENT BEEN THE BEST CITIZEN IN RECENT YEARS BUT I CAN ASSURE YOU THAT IVE PAID AND LEARNED FROM MY PAST MISTAKES. A SIMPLE REFERANCE INTO MY PAST ARRETS WILL SPEAK FOR ITSELF.

NEVER HAVE I DISCHARGED A FIREARM IN PUBLIC OR AT ANYONE AND NEVER HAVE I SHOT-IT-OUT WITH OFFICERS. I ONLY WANTED TO BE KILLED BY OFFICERS BECAUSE AT THE MOMENT I FELT LIKE LIFE WASNT WORTH LIVING ANYMORE.

When a person is on the verge of being torn apart from thier family for a very long time life becomes worthless and self-extinction becomes an option.

Death, for me, was much easier then then suffering watching my mother grow old and watching my daughter become a young lady.

Now that Im incarcerated there is no one to look after my daughter if my mother passes away from cancer since her own mother, Jessica S., who is the same woman who fabricated a false armed carjacking report, abandoned my child shortly after my incarceration.

Im not here to right my wrongs. Im simply writting this letter with the hope of having someone understand that me and my family are being wronged. Im also not saying that Im innocent because nobody knows the intricate details of me or my families life and what we had to go through with Jessica Sanchez.

(7)

I TOOK ARMS WITH THE INTENTION OF DEFENDING MYSELF AGAINST VIOLENT GANGMEMBERS WHO WERE BEING LED BY A VIOLENT WOMAN, AND ANY ARMED INTRUDER WHO POSED A RISK AGAINST ME, MY DAUGHTER, AND MY MOTHERS WELL-BEING.

I DIDNT STEP INTO THE COURTROOM ATTEMPTING TO DECIEVE BUT RATHER EXPLAIN MY ACTIONS. UNFORTUNETLY, MY ATTEMPT AT DOING SO BECAME SO MISCONSCRUED AND TURNED AGAINST ME THAT I WAS UNABLE TO PROPERLY DO SO.

IF MY LAWYER WOULDVE CARED A LITTLE BIT MORE, PUT MORE EFFORT, AND DONE WHAT I TOLD HIM TO DO MAYBE THINGS WOULDVE PLAYED OUT DIFFERENT.

FIFTEEN YEARS IS MORE THAN ENOUGH TIME WHEN THIER ARE NO VICTIMS IN A CASE BUT RATHER THE DEFENDANTS FAMILY BEING THE VICTIMS.

WHAT PUNISHMENT DOES THE GOVERNMENT WISH TO ENDURE ON ME WHEN THE PUNISHMENT ISNT WORTH THE CRIME COMMITTED.



I SIMPLY PROTECTED MY FAMILY FROM ANY THREAT THAT COULD'VE CAME FROM JESSICA SANCHEZ AND HER VIOLENT JEALOUSE BOY FRIEND WHO IS GANG AFFILIATED.

WHATS DONE IS DONE AND I CANT CHANE THE PAST. ALL I ASK FOR IS JUSTICE AND FAIRNESS. ANYTHING ABOVE 15 YEARS IS HIGHLY UNFAIR WHEN THIER WASNT INJURIES IN THE CASE. MY LIFE IS BEING STOLEN FROM ME UNFAIRLY WHEN THERE ARE MORE SERIOUS CRIMES RECIEVING LESS TIME THEN I AM.

*[signature]*
5/1/24